IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARGARET YUSUFU, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:25-CV-3016-K |
| | § | |
| TEXAS ONCOLOGY, P.A., | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Margaret Yusufu's Motion to Compel Defendant to Respond to Plaintiff's Discovery Requests and for Reasonable Attorney's Fee filed on March 16, 2025. (Dkt. No. 22.) United States District Judge Ed Kinkeade referred the motion to the undersigned magistrate judge for a hearing, if necessary, and resolution. (Dkt. No. 25.)

On March 19, the Court entered an order requiring the parties to fulfill their responsibilities to meaningfully confer on the matters raised in the motion to compel and to subsequently file a joint report identifying the matters resolved through attorney conference and, with respect to the matters that remained in need of Court resolution, the parties' respective arguments and authority. (*See* Dkt. No. 26.) The parties submitted an amended joint report (Dkt. No. 29 ("JR")) and appendix (Dkt. No. 29-1 ("App.")) on April 4.

-1-

## I. BACKGROUND

Plaintiff's First Amended Complaint filed on January 20, 2026, is the operative pleading. (*See* Dkt. No. 21 ("Compl.").) According to the allegations therein, Yusufu—a 60-year-old black female—was employed as a senior nurse at Defendant Texas Oncology, P.A. ("TXO") from 2012 until her termination on June 4, 2024. (*Id.* ¶¶ 7, 15.) She avers that she was a lead nurse but that, in December 2022, her supervisor and manager began falsely accusing her of not fulfilling assigned tasks and refused to accept documentation showing that she had been timely completing her work. (*Id.* ¶ 8.) She alleges that, after this point, she received false criticism about her work, was subjected to a greater workload than her peers, and was counseled about alleged violations of the company's code of conduct. (*Id.* ¶¶ 8-12.) Yusufu alleges that her mistreatment and false reports of poor work performance continued beyond that point.

In February 2023, Yusufu was placed on administrative leave for an alleged violation of patient care that she alleges was not her fault. (*Id.* ¶ 24.)[1] Following what Yusufu characterizes as an inadequate investigation, her supervisor reported her to the Texas Nursing Board, and TXO placed her on administrative leave prior to her termination on April 22,2024. (*See id.* ¶¶ 24-29.)

---

[1] Yusufu alleges in her amended complaint that the incident occurred on February 8, 2023. (Compl. ¶ 24.) In the Joint Report, the parties seem to agree that it occurred on February 8, 2024. (*See* JR at at 9.)

Yusufu asserts claims against Texas Oncology for age and race discrimination and retaliation.  (*Id.* ¶¶ 33-45.)

## II.  LEGAL STANDARDS AND ANALYSIS

Rule 26 provides for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

The parties report that they resolved several of the matters raised in Yusufu's motion to compel through attorney conference.[2]  There continues to be a dispute between them with respect to Plaintiff's Interrogatory Nos. 1, 9, 10, 14, 16, and 18; and Request for Production Nos. 3, 12, 18, 19, 20, 23, 24, 27, 36, and 37.  (JR at 2.) The Court addresses them in turn.

### A.    Interrogatories

**Interrogatory No. 1**: Yusufu's first interrogatory requires TXO to "[i]dentify each person providing answers to these interrogatories."  (App. 4.)  TXO objected to the term "each person providing answers" as vague and ambiguous and on the basis

---

[2] Specifically, the parties report reaching agreement on Plaintiff's Request for Admission Nos. 13 and 17; Interrogatory Nos. 2, 3, 4, 6, 7, 8, 11, 12, 13, and 17; and Requests for Production Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 21, 22, 25, 26, 28, 29, 30, 31, 32, 33, 34, and 35.  (JR at 2.)  Plaintiff's motion to compel is denied as moot as to these discovery requests.

that TXO is a professional organization and not a person.  In TXO's view, it cannot answer because "no one individual person provided any answers to the interrogatories."  (JR at 5.)  Additionally, TXO believes it is excused from providing an answer to this interrogatory because it has already identified people who it believes has personal knowledge of the claims and defenses in its initial disclosures. (*Id.*)

TXO's objections are overruled.  "A 'party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity' and 'must explain the specific and particular way in which a request is vague.'"  *Vaughn v. Solera Holdings, LLC*, No. 3:23-CV-2612-N, 2025 WL 790954, at *2 (N.D. Tex. Mar. 12, 2025) (quoting *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 419 (N.D. Tex. 2021)).  TXO has not explained how, exercising "reason and common sense to attribute ordinary definitions to terms and phrases," it is unable to identify each person who provided answers to an interrogatory.  *See VeroBlue Farms*, 345 F.R.D. at 419 (quoting *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018)).  Nor has it stated that it made any "attempt to obtain clarification by conferring with [Yusufu] prior to objecting on this ground."  *See id.* (quoting *Lopez*, 327 F.R.D. at 580) (brackets omitted).

Likewise, TXO has not explained how its status as a legal entity—rather than a natural person—renders it unable to answer the interrogatory propounded.  TXO answers each interrogatory using information provided by people, and the

-4-

interrogatory seeks the identities of the people providing those answers.  This kind of interrogatory to a corporate entity has been characterized as "routine."  *Randleman v. Louisiana Sugar Ref., LLC*, No. CV 17-3532, 2018 WL 2045396, at *2 (E.D. La. May 2, 2018).

TXO's objection to answering the interrogatory because it identified people in its initial disclosure also lacks merit.  TXO points to no authority that allows it to refuse to answer an interrogatory because the information sought is contained in the party's initial disclosures.  More importantly, though, the information sought by the interrogatory is not duplicative.  TXO was required to disclose the identity of individuals having discoverable information "that [it] may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  That is not necessarily synonymous with the information requested by Yusufu's interrogatory.

**Interrogatory No. 9**: This interrogatory directed TXO to "identify any meetings you held with [Yusufu] to counsel or reprimand her during her employment with [TXO]" and, for each meeting, state the date, participants, place, and substance of the discussion.  (App. 6.)  TXO did not assert any objection to the interrogatory and provided substantive responses.  (*Id.*)  Yusufu has not explained how the response is inadequate or what additional information should be compelled.  Yufusu's motion is denied as to this interrogatory.

**Interrogatory No. 10**: Interrogatory No. 10 asks TXO to "identify what steps, if any, you took to investigate whether Plaintiff was a victim of discrimination or whether she was qualified to perform the essential functions of her job." (App. 6.) TXO's only response was to object to the phrase "investigate whether Plaintiff was a victim of discrimination or whether she was qualified to perform the essential functions of her job" as "vague, ambiguous, and not reasonably defined." (App. 6.) After conferring, however, TXO does not assert a vagueness challenge in the Joint Report, so it does not explain how the interrogatory is vague or how it remains to so after attempting to obtain clarification. *See VeroBlue Farms*, 345 F.R.D. at 419.

In the Joint Report, Yusufu asserts that "all information and/or documentation relating to Defendant's actions against discrimination is relevant." (JR at 5.) TXO first contends that Yusufu did not allege discrimination prior to initiating these proceedings, but it does not elaborate how that prevents it from answering the question. If, as it seems to suggest, it did nothing to investigate allegations of discrimination against Yusufu because she made no such allegations during her employment, it can answer the question in that manner.

TXO also argues in the Joint Report that Yusufu, through her argument, is modifying the interrogatory to request its policies and procedures generally relating to discrimination. (JR at 5-6.) The Court does not agree. In any event, TXO provides no objection or explanation for failing to answer the interrogatory requesting TXO to identify steps taken to investigate whether Yusufu was a victim of

-6-

discrimination or whether she was qualified to perform the essential functions of her job.

Yusufu's motion is granted as to Interrogatory No. 10.

**Interrogatory No. 14**: This interrogatory directs TXO to "identify (specifying the name, age, medical reason for termination, and date of termination) any employee who has been terminated since January 1, 2020, because of failure to meet the job requirements of [TXO]." (App. 7.)  TXO objected to the interrogatory based on relevance and disproportionality, because it seeks "confidential and privileged" information, including information protected by the Health Insurance Portability and Accountability Act ("HIPAA") to the extent it seeks a "medical reason for the termination," and overbreadth. (App. 7.)  In the JR, TXO reasserts its relevance objection—contending that the identification of any other employee terminated for failure to meet its job requirements is "wholly irrelevant" to Yusufu's discrimination claims—and also persists in its HIPAA-based objection. (JR at 6.)  It does not assert its conclusory objection based on overbreadth. (*See id.*)

Yusufu contends that she was fired as a result of discrimination and retaliation.  TXO defends Yusufu's firing, at least in part, based on its assertion that she failed to comply with her job requirements, violated TXO policies and procedures, and violated the Texas Nursing Board's policies and procedures. (*See* Dkt. No. 20 ¶ 26.)  Whether others were fired for failing to comply with job requirements during the relevant period and, if so, their identity and age, may be

relevant to Yusufu's discrimination claims and TXO's defenses. *See Braud v. Geo Heat Exchangers, L.L.C*, 314 F.R.D. 386, 391 (M.D. La. 2016) (concluding requested discovery from personnel file of employee allegedly terminated for same reason as plaintiff was relevant and discoverable); *see also Solis v. United Med. Clinic, P.A.*, No. EP-20-CV-2-KC, 2020 WL 2813127, at *3 (W.D. Tex. May 29, 2020) (ordering defendant to answer similar interrogatory identifying "employees who had been terminated for one or more of the same reasons as Plaintiff" (internal quotation marks omitted)).  TXO does not persist in its objection based on proportionality and, in any event, does not support any such objection. *See Lopez*, 327 F.R.D. at 584 ("[A] party seeking to resist discovery on Rule 26(b)(1) and Rule 26(b)(2)(C)(iii) grounds . . . bears the burden of making a specific objection and showing that any discovery request that is relevant to any party's claim or defense fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address—insofar as that information is available to it—the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").  TXO's relevance objection is overruled.

With respect to its objection based on HIPAA-protected information, TXO does not specify whether its objection concerns the employee's protected information or patients' protected information.  (*See* JR at 6.)  To the extent TXO is objecting to

the disclosure of protected medical records of an employee, the Court notes that the interrogatory seeks information about employees terminated "because of failure to meet" TXO's job requirements.  Such request does not require the disclosure of an employee's protected medical information, and TXO is not required to provide protected information relating to an employee.

Instead, the Court understands this interrogatory to request information concerning the medical reason—i.e., the failure to meet the job requirements—that supported an employee's termination (if any).  Providing that information—for example, by stating that an employee was terminated for administering an incorrect medication, failing to document or follow a doctor's orders, or failing to properly apply a medical device—can be done without disclosing an identified patient's medical information.  Unlike in *Wilson v. Martin Cnty. Hosp. Dist.*, 149 F.R.D. 553 (W.D. Tex. 1993), upon which TXO relies, Yusufu's interrogatory does not seek the disclosure of confidential communications between a patient and physician, nor does it require TXO to identify any patient or disclose any medical records.  *See id.* at 555–56.

Yusufu's motion is granted as to this interrogatory.

**Interrogatory No. 16**: This interrogatory instructed TXO to state "[w]hat options . . . Plaintiff [had] to challenge her removal as Dr. Nadler's lead nurse." (App. 8.)  TXO objected to the interrogatory as irrelevant and not proportional because Yusufu did not make any challenge based on her removal as Dr. Nadler's

lead nurse and her ability to grieve that action is irrelevant.  (App. 8.)  In the Joint Report, Yusufu points to her complaint allegations that she was replaced as lead nurse by a younger white nurse as the basis for relevance.  (JR at 7.)  TXO contends that the information is not relevant because Yusufu remained employed in the same position and that her removal as lead nurse does not relate to her suspension or termination.  (*Id.*)

TXO's relevance objection is overruled.  In her amended complaint, Yusufu alleges that she was a lead nurse until her supervisor and manager harassed, intimidated, and discriminated against her compared to younger white colleagues.  (Compl. ¶ 7.)  Such conduct appears to fall within the race discrimination claim asserted.  (*See id.* ¶ 42.)[3]  The requested information does not fall outside the broad realm of relevance.  And, again, TXO neither reasserts its objection based on proportionality nor supports such an objection in response to the motion to compel.

TXO's objections are overruled, and Yusufu's motion is granted as to this interrogatory.

**Interrogatory No. 18**: This interrogatory calls on TXO to "state all trainings received by Grace Rosenberry to qualify and prepare her for a supervisory role." (App. 8.)  TXO objected to this interrogatory based on relevance and proportionality;

---

[3] TXO's response borders on disingenuous by relying exclusively on Yusufu's age discrimination claim in arguing irrelevance, completely ignoring her race discrimination claims.  (*See* JR at 7 ("Plaintiff's first cause of action alleges that she was discriminated against when she was 'suspended and terminated.'").)

objects to "all trainings" as vague, ambiguous, and overly broad; and objects to the term "to qualify and prepare her for a supervisory role" as vague and ambiguous. (App. 8.)

In the Joint Report, Yusufu explains that Rosenberry was her direct supervisor who she alleges ignored or refused Yusufu's requests for help in fulfilling her job duties. (JR at 7.) Yusufu alleges that Rosenberry blocked her transfer to another facility and removed her as a lead nurse without making a genuine effort to help her satisfy the job requirements. TXO contends that "all trainings" is overbroad because it does not "limit[] any such trainings to any relevant subject matter." (JR at 8 (criticizing the interrogatory as asking about "all trainings **received by Grace Rosenberry. . . .**" (emphasis in original)).) Again, TXO's response is unmeritorious. With its ellipses, TXO omits the portion of the interrogatory that belies its argument. The interrogatory obviously requests the identity of trainings that qualify Rosenberry for her supervisory role. If TXO contends that a training Rosenberry completed during or prior to her supervision of Yusufu was relevant to qualifying or preparing Rosenberry for the supervisory position, TXO is ordered to identify them.

## B.  Requests for Production ("RFPs")

**RFP No. 3**: RFP No. 3 seeks all internal TXO communications and all TXO external communications with others (expressly including government agencies, insurance companies, and current/former employees) "relating to or concerning any claims or defenses asserted in this litigation or any aspect of this case." (App. 12.)

Yusufu excludes from her request any documents covered by attorney-client privilege. (*Id.*) TXO produced responsive documents and did not assert any objections to this request. (*See id.*)

In the Joint Report, Yusufu contends that TXO that it reported her to the Texas Nursing Board and responded to her complaint of discrimination to the Equal Employment Opportunity Commission but has not produced such communications. (JR at 8.) TXO reiterates that it did not assert objections to this RFP and has produced responsive documents. (*Id.*) But TXO does not clearly state that it has produced all responsive documents in his custody, control, or possession.

Yusufu's motion is granted at to this RFP to the extent TXO has not already produced responsive documents. If it has produced all responsive documents, subject to its duty to supplement, it must say so.

**RFP No. 12**: Yusufu requests the entire personnel file for any TXO employee who has knowledge of the facts and is anticipated to be a witness in the case, including 20 named doctors and other individuals. (App. 15-16.) TXO objected to the request as overbroad, harassing, irrelevant, and outside the scope of permissible discovery. (App. 16.) It further objects on the basis that the personnel files are confidential and contain personal information, some of which may be protected by HIPAA. (App. 16.)

In the Joint Report, Yusufu states that each person identified has knowledge about her treatment and, for her white colleagues (who are not specifically identified

among the listed individuals), the personnel files would contain documentation relevant to their dissimilar treatment for similar conduct.  (JR at 8.)  Yusufu disclaims any request for HIPAA-protected information about these employees.  (*Id.*)  TXO contends that the request for entire personnel files is overbroad and argues that Yusufu is not entitled to "rummage through the personnel files . . . in hopes of discovering information that might possibly be relevant" to her claims.  (JR at 9 (quoting *Beasley v. First Am. Real Est. Info. Servs., Inc.*, No. 3-04-CV-1059-B, 2005 WL 1017818, at *4 (N.D. Tex. Apr. 27, 2005)).)

Even accepting Yusufu's assertion that each of the 20 identified individuals has knowledge about her claims, she has not explained why their respective personnel file would contain information relevant to her claims or TXO's defenses.  And, while a "court may order production of personnel files of a discrimination plaintiff's comparators if the information contained therein may be relevant to show that a defendant's reasons for terminating a plaintiff were pretextual," *Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 365 (N.D. Tex. 2013), Yusufu has not provided the Court with information sufficient to show that any of the listed individuals might meet the rigorous requirements to qualify as a comparator, *see id.* at 365–66 (discussing qualities and differences for recognized comparators); *see also Gordon v. Greenville Indep. Sch. Dist.*, No. 3:13-CV-0178-P, 2014 WL 6603420, at *2 (N.D. Tex. Nov. 20, 2014) ("In a case involving claims for disparate treatment, the plaintiff is entitled to discovery of comparator data only for 'similarly situated' employees.").

Given the privacy concerns of non-party employees, *see Vaughn*, 2025 WL 790954, at *2, the Court concludes that Yusufu has not shown that her requests for the personnel files of the identified individuals is relevant to her claims or TXO's defenses or proportional to the needs of this case.  Yusufu's motion is denied as to this RFP without prejudice to her ability to conduct further discovery to identify relevant comparators and, at an appropriate time, seek discovery of information from their personnel files.

**RFP Nos. 18 and 37**: In RFP No. 18, Yusufu requests documents "showing that Plaintiff failed to help a distress patient on February 8, 2024," including the medical record, physical exams, complaints, vitals, and doctor's note for the patient. (App. 17.)  TXO objected to the request because it seeks information that is subject to protection under HIPAA.  (*Id.*)  In RFP No. 37, Yusufu requests all documents, including emails, medical records, and doctors' notes, "regarding the incident of February 8, 2024" that led to her termination.  (App. 21.)  TXO objected because it seeks information protected by HIPAA and information protected by the attorney-client privilege.  (App. 21.)  TXO has, however, produced non-confidential and non-privileged documents.  (*Id.*)

Yusufu asserts in the Joint Report that the requested information is relevant to rebutting TXO's defense that her failure to properly execute her job duties on February 8, 2024, caused her suspension and termination.  (JR at 9.)  Yusufu has stated that she would accept the production of patient medical records that are

redacted to shield the patient's identifying information, and she contends that a federal regulation allows disclosure in this circumstance notwithstanding HIPAA protection. (JR at 9 (erroneously citing 45 C.F.R. § 164.512(e)(i)).) TXO contends that it has produced all non-confidential documents relating to the February 8, 2024 event but declines to produce the patient's medical records on the basis that it is protected by HIPAA and cannot be produced without the patient's consent. (*Id.*) TXO contends that redacting the patient's personally identifying information is impractical because it would result in redacting the entire record. (JR at 10.) TXO does not address Yusufu's argument that HIPAA provides for the disclosure of medical records in litigation such as this.

TXO rightfully does not object to relevance, as Yusufu's performance of her job duties in connection with the February 8, 2024, incident appears to be at the center of its defense against her discrimination claims. Rather, TXO's position is that it is prohibited by law from disclosing patient records protected by HIPAA.

TXO's assertion that HIPAA-covered records simply cannot be produced is not well founded. TXO contends that HIPAA's exception to disclosure applies only in suits involving patient malpractice claims against the medical provider. (JR at 10.) That is not so. In *Rutledge v. Elliot Health Sys.*, No. 17-CV-110-JD, 2018 WL 456149, at *2 (D.N.H. Jan. 17, 2018), for example, a plaintiff sued her former employer for age discrimination and wrongful termination and, like here, requested the "complete chart of the patient whose care . . . was the basis for the explanation by the Hospital

of the reason for terminating" her.  *Id.* at *1.  The defendant similarly objected based in HIPAA.  *Id.* at *2.  But the court recognized that 45 C.F.R. § 164.512(e) "create[s] a procedure for obtaining authority to use medical records in litigation."  *Id.* (quoting *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 924–25 (7th Cir. 2004)).  It additionally noted that, although "patient consent is one means for allowing disclosure, health care providers may also disclose patient health information in response to a discovery request or a court order."  *Id.* (citing 45 C.F.R. § 164.512(e)(1)).  Other courts routinely require the production of HIPAA records with redactions or under a protective order.  *See, e.g.*, *Byrnes v. St. Catherine Hosp.*, No. 21-2086-DDC-ADM, 2023 WL 2734229, at *20 (D. Kan. Mar. 31, 2023) (requiring production of HIPAA records under protective order); *Salcedo v. Milton S. Hershey Med. Ctr.*, No. 1:19-CV-2201, 2023 WL 2392040, at *5 (M.D. Pa. Mar. 7, 2023) (requiring production of redacted HIPAA records under confidentiality agreement); *Arsberry v. Wexford Health Sources, Inc.*, No. 3:17-CV-50044, 2021 WL 5232733, at *8 (N.D. Ill. Nov. 10, 2021) (requiring production of redacted HIPAA information under a protective order); *Thomas v. SC Dep't of Mental Health*, No. CV 3:20-1333-MGL-PJG, 2021 WL 5991013, at *1 (D.S.C. Mar. 10, 2021) (ordering production of medical records with personally identifying information redacted); *Hernandez v. Clearwater Transportation, Ltd.*, No. 1:18-CV-319 RP, 2021 WL 148053, at *4 (W.D. Tex. Jan. 15, 2021) (ordering production of HIPAA-protected files under protective order).

Finally, TXO's position with respect to the practicality of redaction is unpersuasive. It does not explain how "[r]edacting the 'patient's personal identifying information' would result in redacting the entire record." (*See* JR at 10.) Information pertaining to the patient's condition, medical treatment providers' actions, or observed outcomes, for example, would not readily identify the patient. Rather, personally identifying information of the kind that must be redacted includes things such as names, addresses, personally identifying numbers (e.g., social security numbers, driver's license numbers), phone numbers, dates of birth, and the like.

TXO's objections are overruled, and Yosufu's motion is granted as to these RFPs. TXO is ordered to either produce documents responsive to one or both of RFP Nos. 18 and 37, except that it may redact patient personally identifying information from the records or produce the records under a HIPAA-compliant protective order entered by the Court.[4]

**RFP No. 19**: Yusufu requests "[a]ll documents showing Plaintiff was not timely moving Chemo as alleged by supervised Gracy Rosenberry in Defendant's Performance Counseling dated January 20, 2023." (App. 18.) TXO objected to the

---

[4] If the parties agree to the terms and entry of a protective order, they must, within ten days of this order, file an agreed motion and present the proposed protective order to the Court. If the parties agree to the entry of a protective order but disagree as to its terms, they shall both file, within ten days of this order, their respective motion for entry of a protective order with their proposed order attached, identifying the terms in dispute and arguing why the Court should adopt their proposed terms.

request because it seeks documents protected by HIPAA—"particularly the patient's medical record information"—but it produced non-protected documents. (App. 18.)

In the Joint Report, Yusufu contends that the documents in dispute—i.e., the patient medical records—are relevant to whether she was "moving Chemo" or not. (JR at 10.) As with the immediately preceding requests, Yusufu is willing to accept redacted records and contends that they fall within a permissible disclosure under HIPAA. (*Id.*) And TXO reproduces its position concerning its inability to produce patient records without patient consent. The Court grants the motion with respect to this request on the same grounds and same qualifications as applied to RFP Nos. 18 and 37.

**RFP Nos. 20 and 27**: In RFP No. 20, Yusufu requests "[a]ll phone conversations including written or recorded conversation, that show Plaintiff refused to discuss a patient's lab work with such patient as per the performance review of April 12, 2023." (App. 18.) TXO objected to the request as vague and ambiguous, saying a request for all "phone conversations" is nonsensical and cannot be reasonably determined. (App. 18.) In RFP No. 27, Yusufu requested "a copy of the lab result and the phone conversation transcripts or recordings that support" any contention that she refused to discuss a lab result with a patient. (App. 19.) TXO objected to the disclosure of HIPAA-protected patient information but produced non-protected information in response. (App. 19.)

-18-

In the Joint Report, Yusufu contends that the information sought is relevant because TXO has pointed to her refusal to discuss lab work with a patient as one of the grounds for adverse employment action.  (JR at 11.)  Yusufu requests documents pertaining to conversations evidencing such refusal.  She also notes her willingness to accept HIPAA-protected information with redactions.  As to RFP No. 20, TXO contends that the phrase "phone conversations" is vague because phone conversations are verbal and cannot be reproduced.  That objection is overruled, as the request only encompasses documents, which may be (and are specifically identified) as conversations that are recorded, either in writing (i.e., transcripts) or audio files.

As to RFP No. 27, TXO makes its same objection to the production of documents protected by HIPAA.  (JR at 12.)  The Court overrules TXO's objection on the grounds discussed as to RFP Nos. 18, 19, and 37 above.

The Court grants Yusufu's motion as to RFP Nos. 20 and 27 as discussed.

**RFP Nos. 23 and 24**: In RFP No. 23, Yusufu requests a copy of TXO's "policy on the acceptance of gifts."  (App. 18.)  In RFP No. 24, she seeks a "copy of [TXO's] employee handbook."  (App. 19.)  TXO did not object to these requests and states that it will produce the requested documents.  Yusufu nonetheless requests that the Court compel TXO to produce them.  TXO does not dispute that the documents are discoverable, and it specifically agrees to produce them.  Yusufu's motion is

denied as moot with respect to RFP Nos. 23 and 24, subject to Yusufu's ability to re-urge her motion if the documents are not timely produced.

**RFP No. 26**: RFP No. 26 states, "If you contend that Plaintiff's action resulted in injuries to Defendant's patients, please provide all documents that support this contention." (App. 19.)  TXO objected to the production of patient medical records subject to HIPAA protection but produced non-confidential documents. (App. 19.)  Although TXO has produced documents related to disciplinary actions taken based on allegations that Yusufu caused injury to a patient, it has not produced the medical documentation that would prove or disprove the accuracy of those allegations.  (JR at 13.)  TXO asserts its same objections to the production of documents containing information protected by HIPAA.  (JR at 13-14.)  The Court overrules TXO's objection on the grounds and to the extent discussed as to RFP Nos. 18, 19, and 37 above.

**RFP No. 36**: RFP No. 36 seeks Yusufu's "activity and phone call log for March 2, 2023, March 3, 2023, March 6, 2023, and February 8, 2024." (App. 21.)  TXO objected to the request as overly broad and irrelevant as to time and scope. (App. 21.)  It stated that it is a large organization with clinics across Texas, and states that the request is "not limited to any location, phone number, or time period that might narrow the request to a permissible request." (App. 21.)

TXO stands on its objections after attorney conference. (*See* JR at 14.)  To the extent TXO persists in asserting that the request is overbroad, the Court disagrees.

Yusufu identifies four specific days at issue, and it stands to reason that the request is limited to the hours when and location(s) where she was on duty on those four days.

To the extent TXO now objects based on vagueness or an inability to ascertain her calls, however, the Court finds merit in the objection. TXO explains that Yusufu was not assigned a specific telephone number, making it impossible to identify *her* phone calls. (JR at 14.) And producing all calls made during her work hours at her work location is overly broad and unlikely to be helpful or proportionate to the claims and defenses asserted in this action. To the extent documents can be identified, however, TXO has agreed to produce them. (JR at 14-15.)

Yusufu's motion is denied as to this request for production.

## C.   Payment of Expenses

Yusufu requests repayment of her expenses associated with filing her motion to compel. (Dkt. No. 22 at 7.) When a motion to compel discovery is granted, a court may order a party resisting discovery, its attorney, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees. Fed. R. Civ. P. 37(a)(5)(A). The rule, however, instructs the court not to award costs if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.* When a motion to compel is granted in part and denied in part, as Yusufu's has been, the court "may, after giving an opportunity to

-21-

be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

It does not appear that the parties have not conferred with respect to Yusufu's request for payment of costs. If, after reflection, Yusufu contends that she is entitled to an apportioned payment of fees associated with making her motion, she must meaningfully confer in person or by phone or videoconference with TXO's counsel to determine whether the parties can agree on a proper amount of repayment. In the absence of such agreement after meaningful conference, Yusufu may make a motion for repayment of expenses **no later than 21 days** after this order is entered.

### III.  CONCLUSION

As explained above, Yusufu's Motion to Compel (Dkt. No. 22) is **GRANTED** in part and **DENIED** in part. Defendant Texas Oncology is **ORDERED**, **within 14 days**, to serve complete responses without objections to Plaintiff's Interrogatory Nos. 1, 10, 14, 16, and 18 and produce documents responsive to RFP Nos. 3, 18, 19, 20, 26, 27, and 37 as provided herein.

**SO ORDERED** on April 7, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE